UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BERNARD ALLEN,

                Petitioner,

                                     Case No. 12-CV-15298

v.

                                     HON. MARK A. GOLDSMITH

LLOYD RAPELJE,

                Respondent.

_____/

**OPINION AND ORDER**
**(1) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS (Dkt. 2), AND**
**(2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

## I.  INTRODUCTION

      Petitioner Bernard Allen, confined at the Saginaw Correctional Facility in Freeland,

Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 2),

through his attorney, Laura K. Sutton, challenging his conviction for two counts of armed

robbery, Mich. Comp. Laws § 750.529.  For the reasons explained fully below, the Court denies

the petition for writ of habeas corpus.

## II.  BACKGROUND

      Petitioner was convicted following a jury trial in the Wayne County Circuit Court.  This

Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which

are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).  See Wagner v.

Smith, 581 F.3d 410, 413 (6th Cir. 2009).

                    This case arose out of a robbery that occurred at approximately
                    5:30 a.m. on January 20, 2007, when the victims, Damien Boyd
                    and Lamarco Greenwood, stopped at a gas station on Fenkell
                    Street in the city of Detroit to fill Greenwood's 1996 Ford Taurus
                    with gas on their way to work.  They were subsequently robbed by

two men, who pulled up to the gas station in a 1994 gold Chevrolet Lumina.   Boyd gave detailed testimony regarding the circumstances surrounding the armed robbery.  He also identified defendant in court as the driver of the Lumina.  Three days after the robbery, police officers attempted to stop a Lumina that fit the description of the vehicle that Boyd had given.  When the police activated the lights and siren, the Lumina accelerated, turned right and crossed through an open field.  A chase ensued, and ultimately, the Lumina stopped and the occupants fled on foot.  One of the officers observed defendant exit the Lumina from the driver's seat. The officer chased defendant and ultimately found defendant hiding in a large black trash receptacle, where defendant was apprehended.

On January 24, 2007, Sergeant Robert Lalone conducted a lineup with defendant and the other perpetrator.  Officer Lalone and Boyd both testified at trial that Boyd identified defendant in the lineup. Officer Lalone further testified that Greenwood identified defendant in the lineup.

Although Greenwood was expected to appear and testify at trial, he failed to appear. The prosecution sought to introduce Greenwood's testimony from defendant's preliminary examination.  The trial court determined that this was permissible, and Greenwood's testimony from the preliminary examination was read into the record.

Defendant presented an alibi defense at trial, claiming that he was with his girlfriend. Defendant's girlfriend testified that at the time of the armed robbery, defendant was at home with her and the couples' children.

A jury convicted defendant of two counts of armed robbery.

People v. Allen, No. 278735, 2009 WL 1508881, at *1 (Mich. Ct. App. May 26, 2009).

The Michigan Court of Appeals affirmed Petitioner's conviction was affirmed on appeal, id. at *8, and the Michigan Supreme Court denied leave to appeal.  People v. Allen, 777 N.W.2d 156 (Mich. 2010).

Petitioner filed a post-conviction motion for relief from judgment (Dkt. 8-9), which was denied.  People v. Allen, No. 07-5400-01, Op. & Order (Wayne Cnty. Cir. Ct. June 2, 2011)

2

(Dkt. 8-7).  The Michigan appellate courts denied Petitioner leave to appeal.  <u>People v. Allen</u>, No. 307330, Order (Mich. Ct. App. May, 21, 2012) (Dkt. 8-15); <u>People v. Allen</u>, 822 N.W.2d 581 (Mich. 2012).

In the brief in support of the petition for writ of habeas corpus, Petitioner seeks habeas relief on the following grounds:

i.   "Bernard B-Gregory Allen was wrongfully denied his Sixth Amendment right to retained counsel of choice."

ii.  "Bernard B-Gregory Allen was wrongfully denied his due process rights to a fair trial and to present a defense where the trial court told the jury not to concern themselves with why complainant Greenwood failed to appear."

iii. "Bernard B-Gregory Allen's right to confrontation was denied by the improper admission of hearsay testimony of prior identification."

iv.  "Bernard B-Gregory Allen's convictions for armed robbery violate due process and constitute an extreme malfunction of the Michigan criminal justice system because the evidence was insufficient as to each element of the charged offenses."

v.   "Bernard B-Gregory Allen was denied the effective assistance of trial counsel when counsel's total trial performance is considered."

vi.  "Bernard B-Gregory Allen is entitled to habeas relief because he was denied his right to the effective assistance of counsel on his direct appeal."

Pet'r Br. at (Dkt. 5).

### III.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim —
>
>> (1)  resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>>
>> (2)  resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in
>> the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405-406 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  Id. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system."  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt."  Renico v. Lett, 559 U.S. 766, 773 (2010) (quotation marks and citations omitted).  A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quotation marks).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was

4

unreasonable." Id. at 102. Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA. See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. (quotation marks omitted). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford v. Viscotti, 537 U.S. 19, 24 (2002). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-787.

## IV.  ANALYSIS

### A.  Claim One:  Choice-of-Counsel Claim.

Petitioner alleges he was denied his right to counsel of choice when the trial court, on the first day of trial, denied his request for an adjournment so that he could retain a new lawyer. Pet'r Br. at 8. At the beginning of the case, Petitioner had retained attorney Randall Upshaw to represent him. Upshaw represented Petitioner at the preliminary examination. After the case was bound over to the Wayne County Circuit Court for trial, Upshaw filed a motion to withdraw as counsel. The trial judge later noted, "I allowed [Upshaw] to withdraw because he wasn't being paid and I appointed Ms. George because [Petitioner] indicated [he] did not have the fund[s] to hire a lawyer . . . ." 5/21/2007 Trial Tr. at 4 (Dkt. 8-3).

On the same day that the trial court granted Upshaw's motion to withdraw, he appointed an attorney to represent Petitioner. See Register of Actions at 2 (Dkt. 8-1). The trial judge issued an order on that date, setting trial for May 21, 2007. See 4/12/2007 Trial/Notice at 1 (cm/ecf page) (Dkt. 8-8). The order also stated that "[n]o adjournments will be granted, except upon order of the Trial Judge for contingency which could not have been anticipated." Id.

On the first day of trial, Petitioner informed the court that he wished to hire a new attorney:

> MS. GEORGE: I'm Jacqueline George representing Mr. Allen. It's come to my attention that my client wishes to retain an attorney at this point. His brother is here saying that he would pay this new attorney and they request an adjournment of the case.
>
> THE COURT: Mr. Allen is that correct?
>
> DEFENDANT ALLEN: Yes, sir.
>
> THE COURT: Stand up, please. You can't hire a new lawyer on the morning of trial. I mean, this is the wrong day for that. Who is the attorney that you want to hire?
>
> DEFENDANT ALLEN: I was going to hire Robert Slameka.

THE COURT: Well, today is your trial date and as you know, the prior attorney that you tried to hire withdrew. I allowed him to withdraw because he wasn't getting paid and I appointed Miss George because you indicated that you did not have the funds to hire a lawyer and if you had any intention of hiring a different lawyer or settling up with Mr. Upshaw that should have been done a long time ago. I'm not going to adjourn your trial. You're going to go forward today with Miss George. You haven't expressed any dissatisfaction with Miss George or any basis for my relieving her on the morning of trial which would be a highly unusual act for me anyway, but anyway, the motion for adjournment, if that's what it is, is denied and we're prepared to move forward here.

5/21/2007 Trial Tr. at 3-4.

Petitioner raised his choice-of-counsel claim in his motion for relief from judgment. The trial court denied Petitioner's claim:

Defendant originally retained attorney Anthony [sic] Upshaw to represent him, but this Court allowed Mr. Upshaw to withdraw when defendant was unable to pay Upshaw. Well in advance of trial, this Court determined, with defendant's consent, that defendant was indigent and Attorney Jackie George was appointed to continue with defendant's legal representation. It was only on the morning of trial that defendant said he wish to retain attorney Robert Slameka, a change of counsel which was far from certain in view of defendant's previously professed indigency and which would have required an adjournment of his trial. Trial counsel George was prepared and ready to proceed and defendant proffered no compelling reason for why he wanted to change lawyers on the morning of trial. This Court refused to adjourn the trial and ordered Ms. George to proceed with trial. This issue was not raised on direct appeal and that omission is offered as evidence of ineffective assistance of appellate counsel.

As counsel points out in her brief, defendant's right to "counsel of his choice" is not unrestricted. See People v Echavarria 233 Mich App 356 (1989). An untimely assertion of the right may be denied if granting it would cause undue delay. US v Gonzalez-Lopez 548 US 140 (2006). Here, it wasn't even clear that Mr. Slameka was "on board." There was no indication that defendant's financial situation had suddenly changed (or how) and there was therefore a strong indication that he was simply attempting to delay proceedings. Defendant's sixth amendment "right of counsel of his choice," was not affected by this Court's ruling and it was thus

7

> not "ineffective" for either trial counsel or appellate counsel to
> make an issue of it.

Allen, No. 07-5400-01, Op. & Order at 1-2 (cm/ecf pages) (Dkt. 8-7).

One element of the Sixth Amendment right to counsel is the right of a defendant who does not require appointed counsel to choose who will represent him or her. United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006). Indeed, "[t]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." Id. (quotation marks omitted). Where a criminal defendant's right to be assisted by counsel of one's choice is wrongly denied, "it is unnecessary for a reviewing court to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation." Id. at 148. "Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received." Id.

However, while a criminal defendant who can afford his or her own attorney has a right to a chosen attorney, that right is a "qualified right." Serra v. Michigan Dep't of Corr., 4 F.3d 1348, 1351 (6th Cir. 1993) (citing to Wheat v. United States, 486 U.S.153, 159 (1988)). Put another way, the right to counsel of one's own choice is not absolute. See Wilson v. Mintzes, 761 F.2d 275, 280 (6th Cir. 1985). The Supreme Court has recognized that "a trial court's wide latitude in balancing the right to counsel of choice . . . against the demands of its calendar." Gonzalez-Lopez, 548 U.S. at 152; see also Lockett v. Arn, 740 F.2d 407, 413 (6th Cir. 1984) ("Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of this right must be balanced against the court's authority to control its docket."). While "[e]very person has a constitutional right to retain at his own expense his own counsel," that right must not "unreasonably interfere with the normal progress of a criminal

8

case." Linton v. Perini, 656 F.2d 207, 211 (6th Cir. 1981).  Thus, the right to counsel of choice may not be used to unreasonably delay a trial.  Id. at 209.

The Sixth Circuit has noted that when "'the granting of the defendant's request [for a continuance to obtain new counsel] would almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference.'"  United States v. Whitfield, 259 F. App'x 830, 834 (6th Cir. 2008) (quoting United States v. Pierce, 60 F.3d 886, 891 (1st Cir. 1995)); see also United States v. Reevey, 364 F. 3d 151, 157 (4th Cir. 2004) ("[A] continuance request for the substitution of counsel made on the first day of trial is clearly untimely under all but the most exigent circumstances." (quotation marks omitted)).  The Sixth Circuit has rejected similar requests as being untimely.  See, e.g., United States v. Trujillo, 376 F.3d 593, 606-607 (6th Cir. 2004) (motion for substitution of counsel was untimely, coming only three days prior to the start of the trial); United States v. Jennings, 83 F.3d 145, 148 (6th Cir. 1996) (motion to continue to obtain new counsel untimely when it was made the day before trial).  Petitioner's request for a continuance to obtain new counsel on the day of trial was untimely, particularly where Petitioner had several opportunities prior to trial to bring any dissatisfaction that he had with his current counsel to the attention of the trial court, but did not do so.  See, e.g., Whitfield, 259 F. App'x at 834.

In the present case, Petitioner's request for an adjournment to hire new counsel was untimely because it was made on the first day of trial.  Petitioner expressed no dissatisfaction with his current appointed counsel.  Under these circumstances, the Michigan courts' rejection of his choice of counsel claim was not an unreasonable application of clearly established federal law.

Accordingly, the Court finds that Petitioner is not entitled to relief on his first claim.

9

**B.  Claim Two:  Jury Instruction Claim.**

Petitioner contends that the trial court deprived him of due process of law and the right to present a defense when, after deciding to admit the preliminary examination testimony of Lamarco Greenwood, the court told the jury that it "need not concern yourself with the reasons" the witness was unavailable.  Pet'r Br. at 11.

The trial court made the following remarks to the jury:

> All right.  Ladies and gentlemen, you have heard testimony and the evidence from other witnesses about Mr. Greenwood.  He was the individual who was alleged to have been with Mr. Boyd at the time of the incident and Mr. Greenwood is not with us, as I guess you've gathered by now, and I have made a ruling that he is unavailable and you need not concern yourself with the reasons and I'm not sure we can even identify the reasons, but he does live on the western side of the state apparently.
>
> In any event, he's not available and he's not here, but Mr. Greenwood testified at a preliminary hearing -- something called a preliminary examination which was sort of a pretrial hearing held in another court before trial and he was sworn to tell the truth just like he would be if he testified here and he was subject to cross examination by a different attorney, but nonetheless an attorney that the Defendant's family had hired to represent him and so since he was sworn to tell the truth and since he was subject to cross examination and since he does appear to be available today I have ruled to allow his preliminary exam testimony to be read to you in lieu of his live testimony here at the trial and so then you are to accept what you hear read to you just as though the witness appeared as a live witness before you.  You just won't get to see him.

5/22/2007 Trial Tr. at 62-63 (Dkt. 8-4).

And at the conclusion of the trial, the court gave the following instruction regarding Greenwood's preliminary examination testimony:

> The testimony of Lamarco Greenwood was read into this trial because he is not available.  This testimony was taken under oath at an earlier hearing and you should consider his testimony in the

10

same way that you would consider any other testimony that you heard here in court . . . .

Id. at 129.

Petitioner raised this claim on his post-conviction motion, which the trial court rejected, stating:

> One of the two complainants in this case, Lamarco Greenwood, failed to appear for trial.  He did appear and testify at the preliminary exam and this Court subsequently allowed the preliminary exam testimony into evidence in lieu of the witness's live testimony.  The propriety of that decision was raised on direct appeal and the Court of Appeals found no error.  Defendant now contends that this Court erred when, at the time the examination testimony was read, the Court instructed the jury that they were not to concern themselves with why the witness was absent.  The jury was also instructed to give the prior testimony the same weight it would give any other witnesses testimony.   This Court's instruction to the jury was consistent with standard jury instructions and correct.  Defendant fails to show how or why it was not correct and defendant's claim that trial counsel failure to argue more forcefully on that point is without merit.

Allen, No. 07-5400-01, Op. & Order at 2 (cm/ecf page).

As the Supreme Court recognized in Henderson v. Kibbe, "[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state-court conviction is even greater than the showing required in a direct appeal." 431 U.S. 145, 154 (1977).  Thus, "[t]he question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned."  Id. (quotation marks and citations omitted).  In this regard, "[a]n omission, or incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  Id. at 155.  The challenged instruction must be evaluated in the context of the entire charge, and not in isolation.  Jones v. United States, 527 U.S. 373, 391 (1999).   Further, any ambiguity,

11

inconsistency, or deficiency in a jury instruction does not, by itself, necessarily constitute a due-process violation.  Waddington v. Sarausad, 555 U.S. 179, 190 (2009).  It is not enough that there might be some "slight possibility" that the jury misapplied the instruction.  Id. at 191.  "Federal habeas courts . . . do not grant relief, as might a state appellate court, simply because the instruction may have been deficient in comparison to" a model state instruction.  Estelle v. McGuire, 502 U.S. 62, 72 (1991).  Moreover, in determining whether to grant habeas relief to a habeas petitioner based upon an erroneous jury instruction, the reviewing court must determine whether that instruction had a "substantial and injurious" effect or influence on the jury's verdict.  See Hedgpeth v. Pulido, 555 U.S. 57, 61-62 (2008).

Petitioner claims that the judge's instruction violated his right to present a defense because it undercut defense counsel's argument to the jury, in which she challenged the credibility of Greenwood's identification of Petitioner because Greenwood failed to appear for trial.  Pet'r Br. at 11-12.

In this case, the jury instruction did not undercut Petitioner's defense, because the trial court merely instructed the jurors not to speculate as to the reason why Greenwood failed to appear at trial.  Counsel was still permitted to argue to the jurors as part of her attack on Greenwood's credibility that he failed to appear in court.  The court further instructed the jurors that the prosecution had the burden of proving Petitioner's guilt beyond a reasonable doubt, and that this burden never shifted.  See 5/22/2007 Trial Tr. at 123.  Thus, the court's instruction that the jurors should not consider the reasons why Greenwood was absent did not deprive Petitioner of a fair trial.  See, e.g., United States v. Daniel, 399 F. App'x 690, 692-693 (2d Cir. 2010) (district court did not plainly err in instructing jury not to speculate about absence of witnesses;

12

instruction only told jury not to speculate as to why certain witnesses were not called, and did not diminish government's burden of proof or undermine defense).

Accordingly, the Court finds that Petitioner is not entitled to relief on his second claim.

**C.  Claim Three:  Confrontation Clause Claim.**

Petitioner claims that his right to confrontation was violated by the testimony of Sergeant Lalone concerning Greenwood's prior identification of Petitioner as one of the perpetrators. Pet'r Br. at 13-16.  The Michigan Court of Appeals agreed that it was erroneous for the trial court to permit Lalone to testify to Greenwood's out-of-court statements, but found the error to be harmless:

> However, this error was harmless.  An erroneous admission of hearsay evidence can be rendered harmless error where corroborated by other competent testimony.  Given the other evidence at trial, it was not more probable than not that the erroneous admission of this hearsay testimony affected the outcome of the trial.  Victim Boyd's testimony provided a detailed account of the robbery and strong identification evidence; he looked directly at defendant during the commission of the robberies, testified that defendant demanded the keys to the Taurus, described defendant's clothing, quickly picked defendant out of the lineup, and identified defendant at trial.  Moreover, Greenwood's preliminary examination testimony, admitted at trial, also provided strong identification evidence.  Greenwood identified defendant as the individual who drove the Lumina and then approached him, stood outside the car door while the victims were being robbed at gunpoint, then took the keys and threw them, telling the victims they could fetch the keys after defendant and the unknown perpetrator left.

Allen, 2009 WL 1508881, at *3 (quotation marks and citations omitted).

"Unless its jurisdiction is at stake, a federal district court on federal habeas review 'may take up issues in whatever sequence seems best, given the nature of the parties' arguments and the interest in avoiding unnecessary constitutional decisions.'"  Dittrich v. Woods, 602 F. Supp. 2d 802, 809 (E.D. Mich. 2009) (quoting Aleman v. Sternes, 320 F. 3d 687, 691 (7th Cir. 2003)),

aff'd in part and rev'd in part on other grounds, 419 F. App'x 573 (6th Cir. 2011). When a federal court is confronted with several possible grounds for adjudicating a case, any of which would lead to the same disposition of the case, "a federal court should choose the narrowest ground in order to avoid unnecessary adjudication of constitutional issues." Id. (citing United States v. Allen, 406 F.3d 940, 946 (8th Cir. 2005)). Therefore, a federal district court on habeas review of a state-court conviction can proceed directly to "a harmless error analysis of a habeas petitioner's claims without first reviewing the merits of the claim or claims, when it is in the interest of judicial economy and brevity to do so." Id. (citing Porter v. Horn, 276 F. Supp. 2d 278, 344 (E.D. Pa. 2003). Because of the compelling evidence of guilt in this case, the Court will move directly to the issue of harmlessness as to any potential error. See, e.g., United States v. Cody, 498 F.3d 582, 587 (6th Cir. 2007).

Confrontation Clause violations are subject to harmless-error review. See Bulls v. Jones, 274 F.3d 329, 334 (6th Cir. 2001) (citing Chapman v. California, 386 U.S. 18 (1967)). On direct review of a conviction, a constitutional error is considered harmless only if the reviewing court finds it was harmless beyond a reasonable doubt. Chapman, 386 U.S. at 24. In Mitchell v. Esparza, the Supreme Court held that habeas relief would be appropriate only if a habeas petitioner could show that a state court applied harmless-error review in an "'objectively unreasonable' manner." 540 U.S. 12, 18 (2003) (per curiam).

However, in Brecht v. Abrahamson, the Supreme Court held that, for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. 507 U.S. 619, 637 (1993). "Citing concerns about finality, comity, and federalism," the Supreme Court in

14

Brecht "rejected the Chapman standard in favor of the more forgiving standard of review applied to nonconstitutional errors on direct appeal from federal convictions." Fry v. Pliler, 551 U.S. 112, 116 (2007). The Supreme Court in Brecht indicated that application of the Chapman harmless-error test by a federal court reviewing a state court conviction on habeas review would undermine a state's "interest in finality," would infringe upon a state's sovereignty over its own criminal matters, "would undercut the historic limitation of habeas relief to those who had been "'grievously wronged,'" and would impose "'significant 'social costs.'" Fry, 551 U.S. at 117 (quoting Brecht, 507 U.S. at 637). Thus, Brecht's more "forgiving" substantial and injurious effect test for harmless error review applies on habeas review of a state-court conviction, regardless of whether the state courts engaged in a harmless error analysis of the petitioner's claims. Fry, 551 U.S. at 121-22.

In the aftermath of Fry, the Sixth Circuit has concluded that the Brecht standard is always the test to apply to determine whether an error was harmless, and it is thus no longer necessary for a habeas court to ask whether the state court unreasonably applied the Chapman harmless-error standard before determining whether the error had a substantial and injurious effect or influence on the verdict. Ruelas v. Wolfenbarger, 580 F.3d 403, 412 (6th Cir. 2009). The Sixth Circuit observed that, in light of the Supreme Court's holding in Fry, "a federal habeas court is never required to determine whether a state court's harmless error determination was 'unreasonable' — Brecht handles the work on this, too." Id. However, although noting that the Supreme Court's holding in Fry "subsumes" the holding in Esparza, the Sixth Circuit further observed the Supreme Court did not overrule Esparza. Id. at 413. Thus, a federal court on habeas review of a state court decision remains free to determine whether the state court's Chapman harmless-error analysis was reasonable. If it was, than the claim should be denied. Id.

Nevertheless, a federal court is also free to proceed directly to use the <u>Brecht</u> test to determine whether the error was harmless.  <u>Id.</u>

Assuming that it was erroneous to allow Lalone to testify regarding Greenwood's prior identification testimony, any error was harmless in light of Boyd's positive identification of Petitioner and Greenwood's testimony from the preliminary examination identifying Petitioner as one of the perpetrators.  In addition to this testimony, Petitioner was seen driving the same Lumina that had been used in the robbery three days later, and when the police went to pull the car over, Petitioner took off at a high rate of speed, before exiting the car and fleeing on foot. Petitioner was then caught hiding in a trash bag receptacle.  Under Michigan law, flight may be relevant to consciousness of guilt.  <u>See</u> <u>Dorchy v. Jones</u>, 320 F. Supp. 2d 564, 580 (E.D. Mich. 2004), <u>aff'd</u>, 398 F.3d 783 (6th Cir. 2005).  In light of the direct and circumstantial evidence against Petitioner, the admission of Greenwood's prior identification was harmless error at most.

To the extent that Petitioner argues that it was improper to admit Greenwood's preliminary examination testimony, the Court finds that Petitioner would not be entitled to relief. Petitioner raised this claim on his direct appeal, which was rejected by the Michigan Court of Appeals:

> The trial court did not abuse its discretion in finding that the prosecutor exercised due diligence in attempting to procure Greenwood's attendance at trial.  The record reflects that the prosecution and police made reasonable, good faith efforts in light of the circumstances.  The parties and the trial court were all under the impression that Greenwood was prepared to provide his testimony voluntarily and willingly, without a subpoena.  He previously attended the preliminary examination and testified without problem.  The first subpoena, sent to his Detroit address, was returned, and the police then learned that Greenwood moved to Grand Rapids.  They maintained contact with Greenwood and he indicated that he would appear for trial. Greenwood was aware of the trial date and made arrangements to stay at the other victim's house the night before trial.  Police spoke with Greenwood the day

16

> before trial and he indicated that he was "en route" to Detroit.  He
> gave no indication that he would fail to show.  When Greenwood
> unexpectedly failed to appear on the morning of trial, the
> prosecution and police, in the short time available, unsuccessfully
> attempted to contact him on his cellular telephone.   They also
> contacted other law enforcement agencies.  The trial court properly
> exercised its discretion in admitting the preliminary examination
> testimony.  Greenwood was thoroughly cross-examined during the
> preliminary examination regarding the central issue at trial, the
> identification of defendant.  There was no Confrontation Clause
> violation.

Allen, 2009 WL 1508881, at *2 (citation omitted).

When prosecutors seek to admit a nontestifying witness's preliminary hearing testimony,

the Confrontation Clause requires two things: (i) the prosecution must establish that the declarant

is "unavailable" by showing that prosecutorial authorities have made a good-faith effort to obtain

the declarant's presence at trial, and (ii) to satisfy the "indicia of reliability" requirement, the

prosecution must demonstrate that the defendant had an adequate opportunity to cross-examine

the declarant at the preliminary examination.  See Pillette v. Berghuis, 630 F. Supp. 2d 791, 804

(E.D. Mich. 2009) (citation omitted), aff'd in part and rev'd in part on other grounds, 408 F.

App'x 873 (6th Cir. 2010), cert. denied, 132 S. Ct. 125 (2011).

In the present case, Michigan Court of Appeals reasonably determined that the prosecutor

and the police had made good-faith efforts to secure Greenwood's presence at Petitioner's trial.

Greenwood had shown up at the preliminary examination and testified without any hesitancy.  A

subpoena was sent to his Detroit address, which was returned.   When police learned that

Greenwood moved to Grand Rapids, they maintained contact with him.  Greenwood told the

police he would appear for trial.   Greenwood had even made arrangements to stay at Boyd's

house the night before trial.  Police spoke with Greenwood the day before trial and he told them

he was "en route" to Detroit.  Greenwood gave no indication that he would fail to appear for

trial.   When Greenwood failed to appear on the morning of trial, the prosecution and police made attempts to call him on his cellular telephone.   They also contacted other law enforcement agencies.   "A good-faith effort . . . is not an ends-of-the-earth effort, and the lengths to which the prosecution must go to obtain a witness generally amount to a question of reasonableness." United States v. Cheung, 350 F. App'x. 19, 23 (6th Cir.2009) (brackets and quotation marks omitted).   The Court concludes that the prosecution and law enforcement made a good-faith effort to locate Greenwood and present him at trial.   See Winn v. Renico, 175 F. App'x. 728, 739 (6th Cir. 2006).

In addition, Greenwood's former preliminary examination testimony bore adequate indicia of reliability, because it was made under oath, Petitioner and his counsel were present, and the witness was subject to cross-examination.   California v. Green, 399 U.S. 149, 165-166 (1970); see also Pillette, 630 F. Supp. 2d at 804.   Therefore, the admission of the preliminary examination testimony at Petitioner's trial did not violate his right to confrontation.   See, e.g., Glenn v. Dallman, 635 F.2d 1183, 1187 (6th Cir. 1980); Havey v. Kropp, 458 F.2d 1054, 1057 (6th Cir. 1972); Pillette, 630 F. Supp. 2d at 804.

Accordingly, the Court finds that Petitioner is not entitled to relief on his third claim.

**D.  Claim Four:  Sufficiency of Evidence Claim.**

Petitioner claims that there was insufficient evidence to support his convictions.  Pet'r Br. at 17-20.   It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."   In Re Winship, 397 U.S. 358, 364 (1970).   But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."

18

Jackson v. Virginia, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt."  Id. (quotation marks omitted) (emphasis in original).  "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319 (emphasis in the original).

More importantly, a federal habeas court may not overturn a state-court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state-court decision was an objectively unreasonable application of the Jackson standard.  See Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) (per curiam).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."  Id.  Indeed, for a federal habeas court reviewing a state court conviction, "the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality."  Coleman v. Johnson, 132 S. Ct. 2060, 2065 (2012).

Petitioner's primary claim is that the evidence was insufficient to establish his identity as one of the perpetrators.  In rejecting Petitioner's claim, the Michigan Court of Appeals noted that Boyd positively identified Petitioner at trial.  See People v. Allen, 2009 WL 1508881, at *6.

The Sixth Circuit has recognized that "the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction."  Brown v. Davis, 752 F.2d 1142, 1144 (6th Cir. 1985).  In the present case, Boyd unequivocally identified Petitioner at trial as being the person who was the driver of the Chevy Lumina who

participated in the robbery. Thus, the Court finds that this evidence was sufficient to support Petitioner's conviction for armed robbery. See Brown v. Burt, 65 F. App'x 939, 944 (6th Cir. 2003) (holding that one witness's unequivocal identification of the defendant as one of the assailants was enough to convict the defendant).

In addition, there was strong circumstantial evidence which linked Petitioner to the crime. "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt. Johnson v. Coyle, 200 F.3d 987, 992 (6th Cir. 2000) (quotation marks omitted). "Identity of a defendant can be inferred through circumstantial evidence." See Dell v. Straub, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002) (citing United States v. Kwong, 14 F.3d 189, 193 (2d Cir. 1994)).

Three days after the robbery, police officers attempted to stop a Lumina that matched the description of the vehicle that had been used by the perpetrators during the robbery. When the police went to stop the vehicle, the Lumina accelerated, turned right, and crossed through an open field. The police chased the Lumina, which eventually stopped. Petitioner exited the driver's seat of the vehicle and fled on foot. Petitioner was discovered by the police hiding in a large black trash receptacle. The fact that Petitioner was attempting to hide from the police is proof of his involvement in this crime, since evidence that a defendant has been hiding when he was arrested is admissible to show consciousness of guilt. See, e.g., United States v. Dorman, 108 F. App'x 228, 242 (6th Cir. 2004).

Because there were multiple pieces of evidence, including eyewitness testimony, to establish Petitioner's identity as the perpetrator of the armed robberies, the Michigan Court of Appeals did not unreasonably apply Jackson v. Virginia in rejecting Petitioner's sufficiency of evidence claim. See Moreland v. Bradshaw, 699 F.3d 908, 919-921 (6th Cir. 2012).

To the extent that Petitioner argues that the verdict went against the great weight of the evidence, he would not be entitled to relief.   A federal habeas court has no power to grant habeas relief on the ground "that a state conviction is against the great weight of the evidence." Cukaj v. Warren, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); see also Artis v. Collins, 14 F. App'x 387, 387-388 (6th Cir. 2001) (declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the manifest weight of the evidence).   A claim that a verdict went against the great weight of the evidence is not of constitutional dimension, for habeas corpus purposes, "unless the record is so devoid of evidentiary support that a due process issue is raised."   Cukaj, 305 F. Supp. 2d at 796; see also Crenshaw v. Renico, 261 F. Supp. 2d 826, 834 (E.D. Mich. 2003) (same).   "The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was any evidence to support it." Dell, 194 F. Supp. 2d at 648.

As long as there is sufficient evidence to convict Petitioner of this crime, the fact that the verdict may have gone against the great weight of the evidence would not entitle him to habeas relief.   Id.   Moreover, attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence.   Martin v. Mitchell, 280 F.3d 594, 618 (6th Cir. 2002).   An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims.   Gall v. Parker, 231 F.3d 265, 286 (6th Cir. 2000).   To the extent that Petitioner challenges the credibility of the victims, he would not be entitled to habeas relief.   See Tyler v. Mitchell, 416 F.3d 500, 505 (6th Cir. 2005).

Finally, to the extent that Petitioner claims he has newly discovered evidence of actual innocence, he would not be entitled to relief.   In Herrera v. Collins, the Supreme Court held that "[c]laims of actual innocence based on newly discovered evidence" fail to state a claim for

21

federal habeas relief absent "an independent constitutional violation occurring in the underlying state criminal proceeding."  506 U.S. 390, 400 (1993).  Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact.  Id.; see also McQuiggin v. Perkins, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."). Thus, freestanding claims of actual innocence are not cognizable on federal habeas review, absent independent allegations of constitutional error at trial.  See Cress v. Palmer, 484 F.3d 844, 854-855 (6th Cir. 2007) (collecting cases).

Moreover, the Supreme Court's subsequent decision in House v. Bell, does not alter this Court's conclusion, as the Supreme Court declined to resolve whether a habeas petitioner may bring a freestanding claim of actual innocence.  547 U.S. 518, 554-555 (2006).  Although the Supreme Court in House noted that "in a capital case a truly persuasive demonstration of actual innocence made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim," id. (quotation marks omitted), the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside of the death-penalty context.  Therefore, Petitioner is not entitled to relief for any actual innocence claim under available Supreme Court precedent. Wright v. Stegall, 247 F. App'x 709, 711-712 (6th Cir. 2007).

Accordingly, the Court finds that Petitioner is not entitled to relief on his fourth claim.

**E.  Claims Five and Six:  Ineffective Assistance of Counsel Claims.**

In his fifth and sixth claims, Petitioner contends that he was denied the effective assistance of trial counsel and appellate counsel, respectively.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland v. Washington, 466 U.S. 668, 687 (1984).  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-688.  In so doing, the defendant must overcome a "strong presumption" that counsel's behavior lies within the "wide range of reasonable professional assistance."  Id. at 689.  In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  Id. at 689.

Second, the defendant must show that such performance prejudiced his defense.  Id. at 687.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  "Strickland's test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'"  Storey v. Vasbinder, 657 F.3d 372, 379 (6th Cir. 2011) (quoting Harrington, 131 S. Ct. at 792).  The Supreme Court's holding in Strickland places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a "reasonable probability" that the result of the proceeding would have been different but for counsel's allegedly deficient performance.  See Wong v. Belmontes, 558 U.S. 15, 27 (2009).  The Strickland standard applies as well to claims of ineffective assistance of appellate counsel.  Whiting v. Burt, 395 F.3d 602, 616-717 (6th Cir. 2005).

23

More importantly, on habeas review, "the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether it was unreasonable — a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted); see also Harrington, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard."). Indeed, "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles, 556 U.S. at 123.  Pursuant to the section 2254(d)(1) standard, a "doubly deferential judicial review" applies to a Strickland claim brought by a habeas petitioner.  Id.  This means that on habeas review of a state-court conviction, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." Harrington, 562 U.S. at 101.  "Surmounting Strickland's high bar is never . . . easy." Id. at 88 (quotation marks omitted)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id. at 105.  In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. Cullen v. Pinholster, 131 S. Ct. 1388, 1407 (2011).

Petitioner first claims that trial counsel was ineffective on the first day of trial for failing to demand that the trial judge employ a "balancing test" in determining whether Petitioner should

24

be allowed an adjournment to obtain new counsel.   Pet'r Br. at 23.   The Court finds that Petitioner is not entitled to relief on his claim.

First, Petitioner requested an adjournment on the day of trial.   Secondly, Petitioner further failed to show that he had actually hired new counsel or had the financial means to do so.   The trial court rejected Petitioner's counsel-of-choice claim on post-conviction review on this basis. Based on the timing of Petitioner's request for an adjournment, and his failure to show that he had actually retained new counsel, the trial court did not clearly err in denying his request.   Any objection to the court's denial of Petitioner's request for an adjournment would have been futile. Trial counsel was not ineffective for failing to raise a futile objection.   See Kittka v. Franks. 539 F. App'x 668, 674 (6th Cir. 2013).

Petitioner next argues that counsel should have "vigorously objected" to the instruction by the trial court that the jury need not consider the reasons why Greenwood was not present at trial.   Pet'r Br. at 23.   The Sixth Circuit has noted that "experienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment" and, thus, often "use objections in a tactical manner."   Lundgren v. Mitchell, 440 F. 3d 754, 774 (6th Cir. 2006).   Defense counsel may have chosen not to object to the trial court's instruction in the hopes that the jury would forget the court's admonition, thereby allowing defense counsel to suggest to the jurors, as she did in closing argument, that Greenwood's absence from trial created a reasonable doubt as to his credibility.

Petitioner next claims that defense counsel was ineffective for failing to object to the admission of Greenwood's preliminary examination testimony on the ground that its admission violated the Confrontation Clause.   Pet'r Br. at 23-24.   The Court finds that Petitioner is not entitled to habeas relief for two reasons.

25

First, although defense counsel did not object to the admission of the preliminary examination testimony on confrontation grounds, the Michigan Court of Appeals did review the claim and found that the admission of Greenwood's preliminary examination testimony did not violate Petitioner's Sixth Amendment right to confrontation.  Any alleged failure by counsel to preserve objections to an issue is not prejudicial where the appellate court considers and rejects the defendant's claim on appeal.  See, e.g., Campbell v. United States, 266 F. Supp. 2d 587, 589 (E.D. Mich. 2003).  Secondly, because the admission of Greenwood's preliminary examination testimony did not violate the Confrontation Clause, counsel was not ineffective for failing to object to its admission on this basis.  See, e.g., United States v. Johnson, 581 F.3d 320, 328 (6th Cir. 2009).

Finally, Petitioner contends that trial counsel was ineffective for failing to object to several instances of prosecutorial misconduct.[1]  Pet'r Br. at 24.  Although defense counsel did not object to the alleged misconduct, the Michigan Court of Appeals reviewed all of Petitioner's prosecutorial misconduct claims for plain error and found that there was no basis for reversal.  Allen, 2009 WL 1508881, at *3-4.  Because the Michigan Court of Appeals considered and rejected Petitioner's claims, albeit it under a plain-error standard, Petitioner is unable to show that he was prejudiced by counsel's failure to object to the prosecutor's remarks.  Campbell, 266 F. Supp. 2d at 589.

---

[1]  It is unclear whether Petitioner wishes to raise an independent prosecutorial misconduct claim. Although Petitioner raised a separate prosecutorial misconduct claim in his initial and amended petitions, Petitioner did not raise a separate prosecutorial misconduct claim in his brief in support of the petition for writ of habeas corpus or in his reply brief.  Assuming that Petitioner seeks relief on a prosecutorial misconduct claim, he would not be entitled to relief because nowhere in any of his pleadings does he state the factual basis for any prosecutorial misconduct, or offer any arguments as to why the prosecutor's conduct violated Petitioner's right to a fair trial. Conclusory allegations of prosecutorial misconduct fail to state a claim upon which habeas relief can be granted.  Johnson v. Renico, 314 F. Supp. 2d 700, 710 (E.D. Mich. 2004).

4:12-cv-15298-MAG-CEB   Doc # 10   Filed 06/05/15   Pg 27 of 28   Pg ID 974

In his sixth claim, Petitioner claims that appellate counsel was ineffective for failing to raise several of his claims on direct appeal.  Pet'r Br. at 25-27.  This Court has already determined that Petitioner's  claims lack merit.  "Appellate counsel cannot be found to be ineffective for failure to raise an issue that lacks merit."  Shaneberger v. Jones, 615 F.3d 448, 452 (6th Cir. 2010) (quotation marks omitted).  Because none of Petitioner's claims can be shown to be meritorious, the Court finds that appellate counsel was not ineffective in his handling of Petitioner's direct appeal.

Accordingly, the Court finds that Petitioner is not entitled to relief on his fifth and sixth claims.

### F.  Certificate of Appealability

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue.  See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  "A petitioner satisfies this standard by demonstrating that . . .  jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El, 537 U.S. at 327.  In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  Id. at 336-337.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the

applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; <u>Castro v. United States</u>, 310 F.3d 900, 901 (6th Cir. 2002).

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, a certificate of appealability is not warranted in this case.

## V.  CONCLUSION

For the reasons set forth above, the Court denies the petition for writ of habeas corpus (Dkt. 2).  The Court also declines to issue a certificate of appealability.

SO ORDERED.


Dated:  June 5, 2015                         s/Mark A. Goldsmith
          Detroit, Michigan                  MARK A. GOLDSMITH
                                             United States District Judge



## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 5, 2015.

                                             s/Johnetta M. Curry-Williams
                                             Case Manager